O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTON PROPERTIES, INC., a California corporaiton and KENTUCK OIL LLC, a Kentucky limited liability company,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JOHN BURSE, an individual, JOHN ROBBINS, an individual,<br><br>　　　　Defendants. | Case No. CV 10-08245 DDP (RZx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Motion filed on 1/21/11] |

　　Presently before the court is defendant John Robbins ("Robbins")'s Motion to Dismiss First Amended Complaint. Having reviewed the papers submitted by the parties, the court DENIES the motion and adopts the following order.

**I. Background**

　　Robbins placed an internet advertisement ("the Advertisement") for a "750 Acre Lease Package w/33 Oil Wells for Sale or [Joint Venture]."[1] (First Amended Complaint ("FAC") ¶ 11. The

---

[1] The vast majority of the FAC's allegations are asserted against both Robbins and co-defendant John Burse ("Burse"). See, e.g. FAC ¶ 11 ("each of Burse and Robbins reaffirmed to Selinger .
(continued...)

Advertisement stated that each lease in the package had "something special" about it, and that each lease had "either got a good history of production or [is] adjacent to properties that have production." (FAC ¶ 11.)

On February 15, 2010, Plaintiffs, represented by Stephen R. Selinger ("Selinger"), responded to the Advertisement. Between February 15, 2010 and March 13, 2010, Robbins repeatedly informed Plaintiffs of the opportunity to purchase interests in leases on oil wells that were ready to produce oil, and told Plaintiffs that investment in "the existing, equipped wells" "would likely yield significant oil." (FAC ¶ 12.) Robbins also informed Plaintiffs that he used a standard lease form to acquire oil leases from property owners, and forwarded Plaintiffs a copy of the standard lease form. (FAC ¶ 13.)

Robbins continued to discuss the leases with Plaintiffs over the telephone into May 2010. In the telephone conversations, Robbins represented to Plaintiffs that any payments received from Plaintiffs would be forwarded to the property owners who had leased to Robbins. (FAC ¶ 15.) Robbins, therefore, would not profit from Plaintiffs' acquisition of interests in the oil leases, but rather would only make money if significant oil was actually found. (FAC ¶ 15).

Between March 12, 2010 and May 20, 2010, Plaintiffs entered into four separate purchase agreements for investments in oil leases. (FAC ¶ 17-21.) The agreements called for payments of over

---

[1](...continued)
. . each of the statements contained in the Advertisement.") The instant motion, however, is brought only by defendant Robbins.

2

$150,000 to Robbins. (Id.) Three of the agreements contained provisions obligating Robbins to assist Plaintiffs in operating the oil leases and acquiring drilling and pumping services. (FAC ¶ 17-20.) Plaintiffs continued to invest funds, at Robbins's suggestion, in pursuit of oil production. (FAC ¶ 22.)

Plaintiffs discovered little or no oil. (FAC ¶ 23.) Plaintiffs also discovered that the wells described by Robbins did not function, or were otherwise unsuitable for oil production. (Id.) Plaintiffs also discovered that, contrary to Robbins' representations, certain leases were not free from liens and encumbrances. (Id.) In August 2010, one of the landowners who had leased to Robbins informed Plaintiffs that he had earlier personally informed Robbins that none of the lease properties was likely to produce oil. (FAC ¶ 24.) The lessor also informed Plaintiffs that he had told Robbins that the leased wells were not suitable for oil production, and further revealed that Robbins used a handwritten note, not the standard lease form, to acquire the oil leases. (FAC ¶ 26).

Plaintiffs ultimately brought suit against Robbins alleging fifteen causes of action, including fraud and securities fraud. Robbins now moves to dismiss the entire complaint.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material

fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id</u>. at 1950. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id</u>. at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id</u>. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

**III. Discussion**

Robbins argues that the FAC fails to allege fraudulent conduct with the specificity required by Federal Rule of Procedure 9(b). (Motion to Dismiss at 5). "To state a cause of action for fraud, a plaintiff must allege (a) misrepresentation (false representation, concealment, or nondisclosure);(b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;(d)

4

| | |
|---|---|
| 1 | justifiable reliance; and (e) resulting damage." <u>Neilson v. Union</u> |
| 2 | <u>Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1140-41 (C.D. Cal. 2003). |
| 3 | Under the heightened pleading requirement of Fed. R. Civ. P. 9(b), |
| 4 | "[a]verments of fraud must be accompanied by the who, what, when, |
| 5 | where, and how of the misconduct charged." <u>Vess v. Ciba-Geigy</u> |
| 6 | <u>Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)(internal quotation |
| 7 | marks and citation omitted). "[A] plaintiff must set forth more |
| 8 | than the neutral facts necessary to identify the transaction." <u>Id</u>. |
| 9 | [T]he circumstances constituting the alleged fraud [must] be |
| 10 | specific enough to give defendants notice of the particular |
| 11 | misconduct . . . so that they can defend against the charge and not |
| 12 | just deny that they have done anything wrong. " <u>Id</u>. |

Plaintiffs have plead fraud with sufficient particularity to satisfy Rule 9(b). Robbins argues that the FAC does not attribute any statements to Robbins, but rather only attributes statements to co-defendant Burse. This argument has no merit. Robbins is correct that one allegation only refers to defendant Burse (FAC ¶ 15 ("Burse also specifically indicated to Plaintiffs in a voice message to Selinger that Burse knew that there was a lot of oil that could be obtained from the wells.")) However, virtually every other allegation contained in the FAC alleges that "<u>each</u> of Burse and Robbins" made fraudulent statements. See, e.g., FAC ¶¶ 11-13, 15-23 (emphasis added).

The what, when, where, and how referenced in the FAC are also more than sufficient to give Robbins notice of the particular misconduct at issue. The FAC alleges that Robbins communicated with Plaintiffs by e-mail and telephone on several occasions between February 15, 2010 and May 13, 2010. (FAC ¶¶ 11-12).

5

During those conversations, the FAC alleges, Robbins misrepresented to Plaintiffs that the wells were in good repair and were likely to yield oil. (FAC ¶ 11-12). The FAC further alleges that on March 9, 2010, Robbins told Plaintiffs over the phone that he had acquired the oil leases with a standard lease form. (FAC ¶ 13). Plaintiffs have clearly also met their burden to "set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106. The FAC sufficiently alleges that, contrary to Robbins's assertions, Robbins acquired the oil leases with a handwritten note, not a standard lease form, that the wells were not functional or likely to produce oil, and that Robbins profited from Plaintiffs' investments, regardless of ultimate oil production. (FAC ¶ 15, 24-25.) The court rejects Robbins's assertion that Plaintiffs' failure to plead the exact contents of any particular communication constitutes a failure to comply with Rule 9(b)'s heightened pleading requirements. (Reply at 5). The allegations of the FAC are specific enough to notify Robbins of the particular misconduct alleged against him and to allow him to mount a reasoned defense, and satisfy Rule 9(b).

In the alternative, Robbins argues that Plaintiffs third and fourth causes of action for securities fraud should be dismissed for failure to comply with the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The requirements of the PSLRA are more stringent than Rule 9(b), in that a plaintiff must plead both falsity and scienter with particularity. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009). As discussed above, the FAC does specifically plead the falsity of Robbins' misleading statements.

To adequately plead scienter, the FAC must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Zucco, 552 F.3d at 991. In deciding whether scienter has been adequately pled, a reviewing court must look to the entirety of the complaint, and not to individual allegations scrutinized in isolation. Id.

Here, the entirety of the complaint gives rise to a strong inference that Robbins made false or misleading statements with intent or deliberate recklessness. The FAC alleges that a lessor explicitly told Robbins that the leases he was acquiring, and which Robbins later promoted to Plaintiffs, were not suitable to oil production. Robbins, having executed a lease in the form of a handwritten note, knew that he had not used a standard lease form to acquire the lease, yet represented to Plaintiffs that he had used such a form. The FAC also alleges that Robbins, despite having assured plaintiffs that any payments made by them would be forwarded to lessors, retained up front payments. These facts alone support a strong inference that Robbins knew that his statements were false.

Furthermore, the FAC alleges that Robbins had engaged in similar fraudulent activity in the past. The FAC alleges that Robbins had earlier been enjoined, as a result of a Securities and Exchange Commission investigation and complaint, from selling undivided interests in oil leases after having portrayed such interests in a misleading fashion. (FAC ¶ 16.) The FAC also alleges that Robbins mislead "other investors" in 2010, giving rise to an inference that Robbins knowingly engaged in a pattern of misleading activity. (FAC ¶ 27.) Taken as a whole, the FAC

7

alleges sufficient facts to plead both falsity and scienter, and satisfies the pleading requirements of the PLSRA.

**IV. Conclusion**

For the reasons stated above, defendant Robbins's Motion to Dismiss First Amended Complaint is DENIED.

IT IS SO ORDERED.

Dated: June 23, 2011

DEAN D. PREGERSON
United States District Judge